**MICHIGAN STATE AFL–CIO, a voluntary, unincorporated labor association; International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), a voluntary, unincorporated labor association; Metropolitan Detroit AFL–CIO, a voluntary, unincorporated labor association; Seafarers International Union of North America, a voluntary, unincorporated labor association; Franklin D. Garrison; and Edgar A. Scribner, Plaintiff,**

v.

**Candice MILLER, Secretary of State, and Frank J. Kelley, Attorney General, Defendant.**

No. 95–CV–70574–DT.

United States District Court, E.D. Michigan, Southern Division.

March 31, 1995.

Theodore Sachs, Detroit, MI, for plaintiff.

Gary P. Gordon, Lansing, MI, for defendant.

BORMAN, District Judge.

## I. *Introduction*

The 1994 amendments to the Michigan Campaign Finance Act (MCFA), Public Act 117 of 1994, (ATTACHMENT I), amended §§ 52, 54 and 55 so as to significantly curtail the political activity of, *inter alia,* labor organizations. Each of the aforementioned amendments subjects a violator to criminal penalties; § 52, misdemeanor; §§ 54 and 55, felony, punishable by up to three years imprisonment and/or fine. These amendments will take effect on April 1, 1995. Plaintiff labor unions filed this motion for a preliminary injunction to prevent the above-listed amendments from taking effect, on the grounds that they violate Plaintiffs' First and Fourteenth Amendment rights under the United States Constitution. The challenged provisions are sections 52(11), which aggregates all political contributions made by political committees established by any labor organization including local and subordinate organizations; 54(1)—which prohibits labor organizations and their employs from making direct contributions or expenditures from their general treasuries, and from providing

volunteer personal services to political candidates in state and local elections; 55(4)—which limits from whom the labor organizations can solicit contributions for established separate segregated funds (SSF's or PACs); and 55(5)—which requires an individuals' annual affirmative consent to payroll deduction contributions for an SSF established, *inter alia,* by a labor organization.

### A. Standard for Preliminary Injunction

■ Four elements must be satisfied before a preliminary injunction can be granted. The movant must demonstrate 1) the likelihood of success on the merits; 2) whether irreparable injury will result without the injunction; 3) that there is a probability of substantial harm to others; and 4) whether the public's interest is advanced by the injunction. *In re De Lorean Motor Co.,* 755 F.2d 1223, 1228 (6th Cir.1985).

A hearing was held on March 10, 1995 at which argument was heard from the two parties to the dispute, and from counsel for amicus curiae, Michigan Chamber of Commerce, on behalf of the defendants.

### B. Exhaustion

■ Defendants and the Chamber have argued that the Court should abstain from ruling on the constitutionality of these provisions affecting significant First Amendment rights, because Plaintiffs have not exhausted their state administrative remedies. Specifically, it is argued that Plaintiffs should have sought administrative declaratory rulings on these sections before seeking a preliminary injunction in federal court. This Court notes that non-compliance with the challenged provisions subjects the violator to criminal liability. This Court concludes that the interpretation of ambiguous statutory provisions, such as are found in these MCFA amendments, impacting on vital First Amendment rights, should not be dependent upon hoped-for declaratory rulings responding to individual requests. Moreover, the Sixth Circuit has recently held that where First Amendment issues arise from a state statute, the Federal District Court should not abstain from hearing the issue. *See, G & V Lounge*

*v. Michigan Liquor Control Comm'n.,* 23 F.3d 1071 (6th Cir.1994).

### II. Amendments to MCFA § 54(1) & (2)

### A. Background

Michigan Public Act 117 of 1994 amended MCFA Sections 54(1) and (2), to prevent labor organizations and their representatives from making direct contribution or expenditure to, or providing volunteer personal services to or on behalf of candidates for state and local political offices. This provision continues its previous restriction on such contributions/expenditures by corporations and joint stock companies and their employs. Violations of this provision are deemed criminal felony offenses with individual sanctions of imprisonment for up to three years and/or up to a $5,000 fine, and non-individual defendant sanctions of a fine of up to $10,000.

Plaintiff labor organizations contend that Sections 54(1) and (2) "violate the First and Fourteenth Amendments to the United States Constitution and the free speech rights and associational rights of the Plaintiffs" (Pl.Comp. P–5).

### B. Holding

■ This Court holds that the MCFA §§ 54(1) & (2) restrictions on labor union expenditures/contributions to state and local political candidates, which mirror state restrictions on corporations, and federal and state restrictions on corporations and labor unions, do not violate the United States Constitution.

### C. Discussion

The Federal Election Campaign Act of 1971 (FECA) contains a parallel prohibition against labor union contributions/expenditures to candidates in Federal elections. Plaintiffs did not challenge that federal provision in the instant case.

Plaintiffs' Brief sets forth on Page vii, the Supreme Court decision in *Austin v. Michigan Chamber of Commerce* (hereinafter Chamber), 494 U.S. 652, 110 S.Ct. 1391, 108 L.Ed.2d 652 (1990), as the "Controlling or Most Appropriate Authority" in support of their position that this provision violates the U.S. Constitution. This Court finds that

*Austin,* which upheld the prior version of this MCFA provision, that prohibited corporations from making contributions or expenditures to candidates in state and local elections, does not mandate striking down this newly enacted similar restriction on labor unions.

In *Austin,* Justice Marshall's majority opinion for six justices upheld the then-applicable § 54(1) provision, prohibiting "corporations from using corporate treasury funds for independent expenditures in support of, or in opposition to, any candidate in elections for state office. Mich.Comp.Laws § 169.254(1) (1979)." *Id.* at 654–55, 110 S.Ct. at 1395. The Supreme Court rejected the Chamber's claim that the statute violated its rights, as a non-profit corporation, under the First and/or Fourteenth Amendments to the Constitution. That *Austin* concluded that corporate political expenditure could be prohibited, does not impel the conclusion that the Constitution protects labor organization political expenditures from similar restrictions. Indeed, the first footnote on the first page of the *Austin* decision, Justice Marshall stated:

> Section 54(1) is modeled on a provision of the Federal Election Campaign Act of 1971 that requires corporations and labor unions to use segregated funds to finance independent expenditures made in federal elections § 441b.

*Austin* at 656 n. 1, 110 S.Ct. at 1395, n. 1. Segregated funds mean voluntary contributions of individuals to corporate/union political action committees. There is no evidence of Supreme Court discomfort with a restriction on labor union political expenditures. The 1994 amendment to MCFA § 54(1) is modeled on that same FECA provision. This similarity warrants the application of the statutory construction maxim, *in pari materia*—statutes relating to the same person or thing and applied together. *Blacks Law Dictionary,* 6th Ed., P. 791. Given the Supreme Court's seeming approval in *Austin* of both the FECA provision, applicable to both corporations and labor unions, and the Michigan statute before the Court, that then applied only to corporations, this Court concludes that there is no basis to hold unconstitutional the 1994 amendment to § 54, which conforms the MCFA to the FECA with regard to labor organization expenditures/contributions on behalf of political candidates.

Nothing in the *Austin* majority opinion states that the Court, while upholding the Michigan statute's limitations on corporations, and explaining the special characteristics of corporations, would reject any such limits on labor unions. The following language and citations from *Austin* bolster this Court's conclusion that MCFA 1994 § 54(1) does not violate the First or Fourteenth Amendment to the United States Constitution:

1. On Page 1398, [494 U.S. at 661] the *Austin* opinion quoted with approval from *FEC v. National Right to Work Committee [NRWC],* 459 U.S. 197, 198–200, 103 S.Ct. 552, 555–56, 74 L.Ed.2d 364 (1982):

> While § 441b restricts the solicitation of corporations and labor unions without great financial resources, as well as those more fortunately situated, we accept Congress' judgment that it is the *potential* for such influence that demands regulation. (emphasis in original).

Thus, in discussing Federal restrictions in the *Austin* context of corporations, the Court restated its language from *NRWC,* which does not in any way disapprove of FEC § 441b restrictions on labor union expenditures.

2. On Page 1400, [494 U.S. at 664–65] responding to the Chamber's attack on § 54(1) as under-inclusive, because it did not regulate the independent expenditures of incorporated labor unions, the Court in footnote 4 stated:

> The Federal Election Campaign Act restricts the independent expenditures of labor organizations as well as those of corporations. 2 U.S.C. § 441b(a).

Thus, the Supreme Court again acknowledged that federal legislation restricts labor union political expenditures.

While the *Austin* Supreme Court opinion proceeded to justify the MCFA's then corporate-only restriction, because of the "crucial differences between unions and corporations" (Page 1401), and the unique advantages conferred by the state on corporations, and to distinguish unions from corporations, the opinion never rejected the concept of imposing such restrictions on labor organizations.

3. On Page 1401, [494 U.S. at 666–67] in upholding the state's restriction on corporation political activity against a strict scrutiny test under the Equal Protection Clause, the *Austin* Court stated:

> "The State's decision to regulate only corporations is precisely tailored to serve the compelling state interest of eliminating from the political process the corrosive effect of political 'war chests' amassed with the aid of the legal advantages given to corporations."

The Supreme Court's upholding the restriction on corporations in the then-MCFA § 54, does not impel the conclusion that the restriction on unions in the now-MCFA § 54 violates the United States Constitution. This Court rejects the application of the maxim of legislative interpretation, "Inclusio unius est exclusio alterius"—the inclusion of one (corporations) is the exclusion of all others (unions). *Black's Law Dictionary*, 6th Ed.P. 763.

The *Austin* opinion noted, at Page 1400, [494 U.S. at 665] that "labor unions differ from corporations in that union members who disagree with a union's political activities need not give up full membership in the organization to avoid supporting its political activities," and that "a union may not compel those employees to support financially union activities beyond those germane to collective bargaining, contract, administration, and grievance adjustment," citing *Communications Workers v. Beck*, 487 U.S. 735, 743–44, 108 S.Ct. 2641, 2648, 101 L.Ed.2d 634 (1988) and *Abood v. Detroit Board of Education*, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977). However, the Court did not in any way indicate any unreadiness with the FECA provision which mirrors the new MCFA § 54 in restricting labor organization expenditures for candidates.

The *Austin* Court concluded that

> the funds available for a union's political activities more accurately reflects members' support for the organization's political views than does a corporation's general treasury. Michigan's decision to exclude unincorporated labor unions from the scope of § 54(1) is therefore justified by

the crucial differences between unions and corporations.

*Id.* at 666, 110 S.Ct. at 1401.

Plaintiffs contend that because *Austin* held that the Michigan legislature could constitutionally exclude labor unions from the reach of then-§ 54(1) because of the special characteristics of corporations, the State legislature cannot, constitutionally, enact subsequent legislation to include labor unions under the reach of § 54(1). This Court concludes that such a conclusion is not mandated, given the fact that the *Austin* Court, on more than one occasion, acknowledged the valid FECA provision prohibiting labor union political expenditures for candidates in federal elections.

4. On Page 1403, [494 U.S. at 671] Justice Brennan's concurring opinion notes:

> We cited with approval in *First National Bank of Boston v. Bellotti*, [435 U.S. 765,] 98 S.Ct. 1407 [55 L.Ed.2d 707] (1978) a discussion of the constitutionality of restrictions on union contributions and independent expenditures in candidate elections:
>
> > "[T]he ban on union political contributions and expenditures is not total but applies only to general union funds. Contributions and expenditures made by a separate fund financed by voluntary contributions are specifically permitted as are expenditures of general funds to solicit contributions to the separate fund...." *Comment*, The Regulation of Union Political Activity: Majority and Minority Rights and Remedies, 126 U.PA.L.Rev. 386, 409 (1977) (cited in *Bellotti, supra* at 788 n. 26 [at 1422 n. 26]).

In the instant case, the issue before this Court as to MCFA § 54, is the restriction on direct political expenditures of labor union funds. The MCFA permits labor organizations to establish separate segregated funds, (SSFs) utilizing individual member contributions to make contributions/expenditures on behalf of state and local political candidates.

5. Page 1404 [494 U.S. at 672–73] of Justice Brennan's concurring opinion, in distinguishing the organization in *FEC v. Massachusetts Citizens for Life (MCFL)*, 479 U.S.

238, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986), from the Chamber, stated:

> Third, the group was not established by a business corporation or a labor union and it [was] its policy not to accept contributions from such entities.

In the instant case, the issue is labor union political contributions, a markedly different situation from the organization in MCFL, a nonprofit, nonstock corporation created solely to support pro-life causes through education and political activities.

In reaching its decision as to the constitutionality of § 54, this Court recognizes that the Supreme Court, in *Abood v. Detroit Board of Education,* 431 U.S. 209, 235, 97 S.Ct. 1782, 1800, 52 L.Ed.2d 261 (1977), stated that a union could constitutionally expend funds on behalf of political candidates:

> We do not hold that a union cannot constitutionally spend funds for the expression of political views, on behalf of political candidates, or toward the advancement of other ideological causes not germane to its duties as collective-bargaining representative.[32] Rather, the Constitution requires only that such expenditures be financed from charges, dues, or assessments paid by employees who do not object to advancing those ideas and who are not coerced into doing so against their will by the threat of loss of governmental employment.

However, *Abood* footnote 32 stated:

> 32. To the extent that this activity involves support of political candidates, it must, of course, be conducted consistently with any applicable (and constitutional) system of election campaign regulation.

Finally, this Court notes the following language from the Supreme Court opinion in *California Medical Ass'n v. F.E.C.,* 453 U.S. 182, 201, 101 S.Ct. 2712, 2724, 2724, 69 L.Ed.2d 567 (1981), authored by Justice Marshall, who subsequently authored *Austin:*

> [t]he differing restrictions placed on individuals and unincorporated associations on the one hand, and on unions and corporations, on the other, reflect a judgment by Congress that these entities have differing structures and purposes, and that they therefore may require different forms of

regulation in order to protect the integrity of the electoral process.

While recognizing that *Austin* was a subsequent opinion, this Court concludes that the dichotomy utilized in *California Medical,* that ties unions and corporations together in terms of being subject to regulation, is relevant to the instant case.

This Court finds that the 1994 amendments to MCFA § 54 restricting labor union expenditures/contributions to political candidates in state and local elections does not violate the First and/or Fourteenth Amendments to the United States Constitution.

III. *Michigan P.A. 117 Amendments to MCFA §§ 52 and 55*

*Background Discussion of Constitutional Issues*

The Supreme Court has emphasized, time and again, the vital importance of First Amendment rights regarding expression and association.

In *Thomas v. Collins,* 323 U.S. 516, 529–532, 65 S.Ct. 315, 322–24, 89 L.Ed. 430 (1945), the Supreme Court stated:

> This case confronts us again with the duty our system places on this Court to say where the individual's freedom ends and the State's power begins. Change on that border, now as always delicate, is perhaps more so where the usual presumption supporting legislation is followed by the preferred place given in our scheme to the great indispensable democratic freedoms secured by the First Amendment. That priority gives these liberties a sanctity and a sanction not permitting dubious intrusions.
>
> . . . .
>
> It was not by accident or coincidence that the rights to freedom in speech and press were coupled in a single guaranty with the rights of the people peaceably to assemble and to petition for redress of grievances.
>
> . . . .
>
> [I]n our system, where the line can constitutionally be placed presents a question this Court cannot escape answering independently, whatever the legislative judg-

ment in the light of our constitutional tradition.

In *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 777 n. 11, 98 S.Ct. 1407, 1416, n. 11, 55 L.Ed.2d 707 (1978), the Supreme Court, in dealing with the protected area of First Amendment political rights, noted:

> Freedom of expression has particular significance with respect to government because "it is here that the state has a special incentive to repress opposition and often wields more effective power of suppression." T. Emerson, Toward a General Theory of the First Amendment 9 (1966).

In the instant case, the question before this Court relates to the 1994 MCFA amendments which were significantly directed at labor union participation in the state and local election process. Indeed, the Michigan Chamber of Commerce's Motion to Intervene stated at Page 2: "The Michigan Chamber was involved in drafting the legislation at issue in this action...."

It is because freedom of expression has particular significance with respect to government that the Supreme Court has required a compelling state interest to limit any political speech restrictions and further why any such restrictions must be subject to strict scrutiny. The United States Supreme Court held in *Buckley v. Valeo*, 424 U.S. 1, 12–13, 96 S.Ct. 612, 632, 46 L.Ed.2d 659 (1976), that political "expenditure limitations operate in an area of the most fundamental First Amendment activities", that "the First Amendment protects political association as well as political expression", and that "governmental action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny."

The Supreme Court further highlighted the importance of a largely unfettered political process in these terms:

> In the free society ordained by our Constitution it is not the government, but the people—individually as citizens and candidates and collectively as associations and political committees—who must retain control over the quantity and range of debate on public issues in a political campaign.

*Id.* at 57, 96 S.Ct. at 653.

Insofar as there are to be restrictions in this area, the Court concluded "that disclo-

sure requirements—certainly in most applications—appear to be the least restrictive means of curbing the evils of campaign ignorance and corruption that Congress found to exist." *Id.* at 67–68, 96 S.Ct. at 658. The 1994 MCFA amendments at issue do not utilize disclosure requirements, but instead, utilize restrictions, to be enforced by severe criminal sanctions. Further, the use of criminal sanctions with regard to conduct involving significant First Amendment concerns enhances the potential concerns regarding vagueness. In *NAACP v. Button*, 371 U.S. 415, 432, 83 S.Ct. 328, 337–38, 9 L.Ed.2d 405 (1963), the Supreme Court emphasized that the "standards of permissible statutory vagueness are strict in the area of free expression", because "the threat of sanctions may deter their exercise almost as potently as the actual application of sanctions. The Court pointed out that in the area of First Amendment rights, "Precision of regulation must be the touchstone in an area so closely touching our most precious freedoms". *Id.* at 438, 83 S.Ct. at 340. Those concerns are highly relevant to the instant case which involves significant First Amendment rights and serious criminal sanctions.

As the Supreme Court noted in *Buckley,* in its discussion of the requirement that individuals report contributions/expenditures: "the provision raises serious problems of vagueness, particularly treacherous where, as here, the violation of its terms carries criminal penalties and fear of incurring these sanctions may deter those who seek to exercise protected First Amendment rights." *Id.* at 76–77, 96 S.Ct. at 662.

The Court cautioned that

> Due process requires that a criminal statute provide adequate notice to a person of ordinary intelligence that his contemplated conduct is illegal, for "no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." Where First Amendment rights are involved, an even "greater degree of specificity" is required.

*Id.* at 77, 96 S.Ct. at 662 (citations omitted).

As to what restrictions are constitutionally permitted, time and again the Supreme

Court has reaffirmed this statement from *FEC v. NCPAC,* 470 U.S. 480, 495–96, 105 S.Ct. 1459, 1468, 84 L.Ed.2d 455 (1985):

> [P]reventing corruption or the appearance of corruption are the only legitimate and compelling government interests thus far identified for restricting campaign finances.

The most recent reaffirmation of these limiting rationale came in *Austin, supra,* 494 U.S. at 658–59, 110 S.Ct. at 1397.

*Austin* also reaffirmed the Supreme Court's requirement that the strictest scrutiny must be applied in a case involving political expression:

> Because the right to engage in political expression is fundamental to our constitutional system, statutory classification impinging upon that right must be narrowly tailored to serve a compelling governmental interest.

*Austin, supra* at 666, 110 S.Ct. at 1401.

Further, the Supreme Court has, time and again, trumpeted the right of individuals to associate for political purposes:

> Our decisions establish with unmistakable clarity that the freedom to associate for the purpose of advancing beliefs and ideas protected by the First and Fourteenth Amendments.

*Abood v. Detroit Board of Education,* 431 U.S. 209, 232, 97 S.Ct. 1782, 1798, 52 L.Ed.2d 261 (1977).

The essence of associating for the advancement of political beliefs is the ability to join together in organizations. Since MCFA § 54 prevents a labor union from making direct contributions/expenditures to a candidate in a state or local election, and this opinion has already upheld that restriction, the appropriate remaining vehicle in which individuals desiring to join with labor unions to advance their political beliefs is the separate segregated fund (SSF) or PAC. Thus, it is imperative that the amendments to §§ 52 & 55 provide a clear procedure for Plaintiffs to follow in exercising their First Amendment rights.

*A. The Amendment to MCFA § 55(5): Requiring annual affirmative consent to reverse checkoff contributions to SSFs*

■ This Court holds that in requiring that every individual must reaffirm, annually, an intention to contribute to an SSF, the § 55(5) amendment oversteps the limit of legislative control permissible in an area permeated with first amendment rights and protections. In essence, the state has designated itself as the guardian over a working person's political contributions to an SSF, and threatened the SSF and its directors with criminal felony prosecution if the legislative provision is not strictly adhered to. This provision cannot survive strict scrutiny.

In *Thomas v. Collins,* 323 U.S. 516, 545, 65 S.Ct. 315, 329–30, 89 L.Ed. 430 (1945), Justice Jackson, concurring, pointed out that:

> The very purpose of the First Amendment is to foreclose public authority from assuming a guardianship of the public mind through regulating the press, speech, and religion. In this field every person must be his own watchman for truth because the forefathers did not trust any government to separate the true from the false for us.

In the case of MCFA § 55(5), the government has entered the realm of an individual's political speech and association, and concluded that an individual citizen is incapable of setting a political course for more than one year. The Court finds this provision offensive to the concept of freedom from unnecessary government intrusion into the lives of its citizens in the most sacred area of freedom of speech.

There is no compelling state interest to justify legislation impacting the free political choices of its working citizens by limiting their political commitment via reverse checkoff to one year at a time. The Supreme Court has noted: "Working men do not lack capacity for making rational connections." *Thomas v. Collins, supra* at 535, 65 S.Ct. at 325.

MCFA § 55(5) also creates a significant bureaucratic requirement, necessitating paperwork, time, recordkeeping and calendaring which must be checked time and again, for the failure to timely adhere to this provision as to even one individual subjects the SSF to a serious criminal penalty. This "big brother" provision is a clear violation of an individual's First Amendment rights to free speech and free association. Indeed, there may also be problems of vagueness in

§ 55(5), as evidenced by a four page letter to the Secretary of State from the Michigan Chamber of Commerce (ATTACHMENT II) requesting declaratory rulings to clarify many unclear aspects regarding this provision.

Finally, there is no evidence in the record supporting any claim that the existing reverse checkoff procedure improperly coerces individuals into making political contributions. The United States Court of Appeals for the Sixth Circuit, in *Kentucky Educators Public Affairs Council (KEPAC) v. Kentucky Registry*, 677 F.2d 1125 (6th Cir.1982), found no reason to disturb the district court's enjoining the Registry from interfering with the reverse checkoff payroll deduction process for political contributions to KEPAC. The District Court had concluded that there was no evidence that the KEPAC checkoff was coercive within the meaning of the state statute. The Sixth Circuit agreed with the District Court's conclusion that the State's action to interfere with the checkoff program "violated KEPAC's First Amendment rights to collect money for political purposes by use of a reverse check-off system". *Id.* at 1133. The Sixth Circuit found no error in the District Court's finding that:

6. Inertia of a person to take a step to see that his money is not being used for political purpose, does not deprive him of the right to take that step and cannot be logically interpreted by the Registry as coercion.

In the instant case, this Court finds no evidence in the record of any coercion in the reverse check-off procedure. The Court holds that this MCFA amendment, § 55(5), is improperly restrictive and violative of Plaintiffs' rights under the First and Fourteenth Amendments. The Michigan legislature's concern about the potential for coercion, could have been dealt with through significantly less restrictive alternatives, e.g. requiring that an annual notice accompany the worker's paycheck stating that an individual could terminate the reverse checkoff for political activity at any time. In *Austin v. Michigan Chamber of Commerce*, 494 U.S. 652, 664–65, 110 S.Ct. 1391, 1400–01, 108 L.Ed.2d 652 (1990), Justice Marshall noted

that dissenting union members' rights were appropriately protected with the opt-out features mandated in *Beck* and *Abood Communications Workers v. Beck*, 487 U.S. 735, 108 S.Ct. 2641, 101 L.Ed.2d 634 (1988), and *Abood v. Detroit Board of Education*, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977).

B.  *Section 55(4)—Individuals Who Can Be Solicited to Contribute to a Labor Organization SSF*

■ MCFA § 55 provides for the establishment of corporation and labor organization SSFs to be used for political purposes, including contributions to, and independent expenditures on behalf of, candidates running for local and state office. 1994 P.A. 117 established an entirely new subsection four, relating to labor organizations, which states:

Contributions for a separate segregated fund established under this section by a labor organization may be solicited from any of the following persons or their spouses:

(a) Members of the labor organizations who are individuals.

(b) Officers or directors of the labor organization.

(c) Employees of the labor organization who have policy making, managerial, professional, supervisory, or administrative nonclerical responsibilities.

Plaintiffs contend that this language unconstitutionally limits the pool of solicitees for central labor bodies such as the state or local AFL–CIO, since the membership of these bodies is primarily composed of other affiliate labor organizations, plus a few administrative employees. Thus, for example, the state AFL–CIO cannot solicit UAW members to contribute to its SSF. Plaintiffs also assert that the § 55(4) language does not comport with that of the relevant FECA provision.

Finally, Plaintiffs assert that the § 55(4) prohibition of AFL–CIO solicitation of affiliate members, violates the Equal Protection Clause as to labor organizations, in that § 55(3) which deals with non-profit corporations, permits solicitation of "stockholders of members of the corporation." Thus, the Chamber can solicit stockholders of its corporate members—more than 6100 members—

while the AFL–CIO cannot solicit UAW members.

The language of §§ 55(3) & (4) is clear on its face. Also clear on its face is MCFA § 55(6) which provides for criminal felony penalties for anyone who violates § 55.

This Court holds that the language of subsection four unconstitutionally deprives labor unions and their members of their constitutional right to equal protection of the law, because it prevents central labor bodies from exercising their right to political speech by soliciting members of their affiliates, while the Chamber is permitted to solicit stockholders of its "members". Indeed, the unconstitutionality of § 55(4) appears to have been acknowledged by both the Chamber and the State. Although the Chamber's brief (Page 4), begins with the assertion that § 55(4) is constitutionally valid, it quickly backtracks:

> Plaintiffs complain that this provision does not exactly parallel the federal rules because the Michigan law appears to completely bar solicitation for labor organizations SSF's whose members are only other labor organizations, rather than individuals. The Chamber agrees that such a construction could raise constitutional questions.

While the Chamber then proceeds to argue that no such construction has been imposed, this Court is required to read the statute on its face—and on its face that provision is not ambiguous. At oral argument, the Chamber suggested that § 55(4) could

> be interpreted in a constitutional fashion, and if you look at the federal regulation and then the interpretations which have occurred since that time, the Secretary of State can clearly say that language cannot be applied to a federation such as the AFL–CIO because they have no members....

*Preliminary Injunction Hearing, March 10, 1995, Pirich, P. 61*

Thus, the Chamber implies that § 55(4) may be unconstitutional on its face, but requests that this Court rewrite the statute to hold it inapplicable to organizations like the AFL–CIO.

The State, at oral argument also appeared to acknowledge that § 55(4) is unconstitutional insofar as it limits solicitation by the AFL–CIO:

> I have acknowledged in our briefs that the Legislature may have drawn the line too far when they enacted that provision.
>
> ....
>
> [T]he statute as written does not include the regulation that the federal government had added to take care of the limited problem with regard to central labor bodies such as the Michigan AFL–CIO. However, even if that provision is unconstitutional on its face as suggested by Plaintiffs, that does not mean that the whole law is struck down.

*Preliminary Injunction Hearing, March 10, 1995, Gartner, Pp. 50–51*

■ This Court is not permitted to rewrite legislation to create constitutionality. *Triplett Grille v. City of Akron*, 40 F.3d 129, 136 (6th Cir.1994). Accordingly, this Court accepts the clear words of § 55(4), and holds that this provision, in conjunction with § 55(3) violates Plaintiff's right to equal protection of the laws in violation of the Fourteenth Amendment.

C. *Amendment to § 52(11)(b) & (c); treats all SSFs established by a national or international labor organization as a single independent committee for purposes of contribution/expenditure maximums*

■ This provision, which aggregates all contributions/expenditures made by units of a national or international union for the purpose of the MCFA dollar limits, tests the First Amendment Constitutional right to free expression and free association of members of separate labor units. The failure of § 52(11)(b) to define "subordinate organization", and its failure to provide a procedure to determine whether an entity is a subordinate, raises the issue discussed by the United States Court of Appeals for the Ninth Circuit in *FEC v. Sailors' Union*, 828 F.2d 502 (1987).

The Ninth Circuit, in *Sailors'*, recognized the reality of legitimate independent political

voices within a single union. The MCFA does not consider that possibility and assumes that all affiliates of a union are in a monolithic organization.

In *Sailors'*, the Ninth Circuit dealt with the issue of "whether three affiliate unions of the Seafarers International Union of North America (Seafarers) should be considered local units of Seafarers or independent 'labor organizations' affiliated with Seafarers for purpose of calculating compliance with the campaign contributions limitations of the" FECA, 2 U.S.C. § 431 et seq. *Id.* at 503. The Ninth Circuit determined that at least two of the three unions were "independent labor organizations under the Act, and that therefore the respective related political action committees (PACs) of all three must be treated *separately* to determine the PAC's compliance with the campaign contribution limitation in 2 U.S.C. § 441a(a)(2)." *Id.* at 503–04.

Thus, while Congress created so-called anti-proliferation rules in the FECA, 2 U.S.C. § 441a(a)(5), just as the State of Michigan did in MCFA § 52(11), the Federal rules do not compel the conclusion that the contributions of all political committees of all subsidiaries of an international union be aggregated under the contribution maximum, regardless of the degree of internal control exercised by the international union and regardless of the internal organizational structure of any particular international union.

The Ninth Circuit held that the statutory provision's aggregation requirement can apply only upon a substantive determination that the three entities were subsidiaries, branches, divisions, departments, or local units of the Seafarers Union, and that determination could "be made only by examining the organization division of power between the union in question and the larger organization." *Id.* at 506. The Court concluded that "authority is the central question under" the law. *Ibid.* There are no examination procedures in MCFA § 55(11), nor are there any regulations that provide for such examinations as there for the FECA—11 C.F.R. § 100.5(g)(2), (3) (1993). Instead, the MCFA offers criminal penalties for anyone who violates § 52(11).

In *Sailors'*, the Federal Election Commission conceded that § 441a(a)(5) does not force aggregation with respect to the members of federations of independent labor organizations like the AFL–CIO, but even that point is not conceded in the instant legislation. The plaintiff PAC argued that Seafarers was just such a federation of independent labor organizations because of the rather limited nature of the unions centralized authority. This Court notes that the Seafarers are one of the plaintiffs in the instant case.

The Ninth Circuit concluded, after studying House and Senate legislative history, that Congress intended to aggregate contributions of locals of international unions, but did not intend to aggregate contributions of member unions of labor federations. The Ninth Circuit noted that the regulations do not cover campaign contributions by independent members of a labor federation—only subordinate divisions of AFL–CIO type federations, not the member unions themselves.

The Ninth Circuit then examined the organic structure of Seafarers to ascertain whether it was closer to an international union than a federation of unions; "we look to the constitutions of the Seafarers and its affiliates to determine the degree of control which its exercises over its affiliates." *Id.* at 507. The Ninth Circuit concluded that two of the affiliates were independent labor organizations for the purposes of the FECA, and accordingly campaign contributions by all the funds could not be aggregated. Accordingly, under *Sailors'*, if an entity is an affiliate labor union, then it should not be limited by the restrictions contained in MCFA § 52(11).

While the Chamber's brief, at Pp. 4–5 acknowledges that on its face the statute might be read to expose labor union and corporations to undue restrictions on their speech by requiring the aggregation of narrowly affiliated but functionally independent SSF contributions in determining whether spending limits were exceeded, at oral argument the Chamber stated that "there are guides that could be given ... to make the determination if there is an affiliation". (Preliminary Injunction Hearing, March 10, 1995, Pirich, P. 68) The statute does not provide this Court

with any of those guides, nor are there any regulations in place as with the FECA—just criminal penalties for those who violate the statute.

Because this Court is dealing with a statutory provision limiting First Amendment rights to free speech, and a bad guess by an individual as to whether an entity is an affiliate or a subordinate, subjects that individual to a criminal penalty, this provision must be held unconstitutional as an interference with Plaintiffs' right to engage in political free speech. The Court notes, however, that if regulations are put into place by the State to deal with the "affiliate" issue raised in *Sailors'*, the provision would then not violate the Constitution.

*Conclusion*

The Court rejects Plaintiffs' request for a preliminary injunction as to the Michigan Public Act 117, 1994, amendment to § 54(1).

The Court grants a preliminary injunction as to the following 1994 amendments to the MCFA:

1. § 52(11)

ATTACHMENT I

2. § 55(4)

3. § 55(5)

As to the latter provisions, § 52(1), and § 55(4) & (5), this Court has determined that they satisfy the four elements mandated for determination by the Sixth Circuit in *In re De Lorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir.1985).

This Court concludes, that as set forth in this opinion, as to each of the three challenged provisions

(1) there is a likelihood of success on the merits

(2) irreparable injury to significant constitutional rights will result without the injunction

(3) there is a probability of substantial harm if these provisions, with their criminal sanctions, are not enjoined

(4) the public's interest in a free, open, and vital political process is advanced by the injunction.

SO ORDERED.

M.C.L.A. § 169.252

Sec. 52. (1) Except as provided in subsection (7), a person other than an independent committee or a political party committee shall not make contributions to a candidate committee of a candidate for state elective office that, with respect to an election cycle, are more than the following:

(a) $3,400.00 for a candidate for state elective office other than the office of state legislator.

(b) $1,000.00 for a candidate for state senator.

(c) $500.00 for a candidate for state representative.

(2) For the purpose of subsection (1), "with respect to an election cycle" means 1 of the following:

(a) For a general election, the period beginning the day following the last general election in which the office appeared on the ballot and ending on the day of the next general election in which the office next appears on the ballot.

(b) For a special election, the period beginning the day a special general election is scheduled or the date the office becomes vacant, whichever is earlier, and ending on the day of the special general election.

Additions are indicated by underline; deletions by asterisks * * *

(3) An independent committee shall not make contributions to a candidate committee of a candidate for state elective office that, in the aggregate for that election cycle, are more than 10 times the amount permitted a person other than an independent committee or political party committee in subsection (1).

(4) A political party committee other than a state central committee shall not make contributions to the candidate committee of a candidate for state elective office that are more than 10 times the amount permitted a person other than an independent committee or political party committee in subsection (1).

5 A state central committee of a political party shall not make contributions to the candidate committee of a candidate for state elective office other than a candidate for the legislature that are more than 20 times the amount permitted a person other than an independent committee or political party committee in subsection (1). A state central committee of a political party shall not make contributions to the candidate committee of a candidate for state senator or state representative that are more than 10 times the amount permitted a person other than an independent committee or political party committee in subsection (1).

(6) A contribution from a member of a candidate's immediate family to the candidate committee of that candidate is exempt from the limitations of subsection (1).

(7) Consistent with the provisions of this section, a contribution designated in writing for a particular election cycle shall be considered made for that election cycle. A contribution made after the close of a particular election cycle and designated in writing for that election cycle shall be made only to the extent that the contribution does not exceed the candidate committee's net outstanding debts and obligations from the election cycle so designated. If a contribution is not designated in writing for a particular election cycle, the contribution shall be considered made for the election cycle that corresponds to the date of the written instrument.

(8) A candidate committee, a candidate, or a treasurer or agent of a candidate committee shall not accept a contribution with respect to an election cycle that exceeds the limitations in subsection (1), (3), (4), or (5).

(9) For the purposes of this act, a contribution made or received before June 21, 1989 is considered to be made with respect to an election cycle.

(10) A person who knowingly violates this section is guilty of a misdemeanor punishable, if the person is an individual, by a fine of not more than $1,000.00* * * or imprisonment for not more than 90 days, or both, or, if the person is not an individual, by a fine of not more than $10,000.00.

(11) For purposes of the limitations provided in subsections (1) and (3), all contributions made by political committees or independent committees established by any corporation, joint stock company, or labor organization, including any parent, subsidiary, branch, division, department, or local unit thereof, shall be considered to have been made by a single independent committee. By way of illustration and not limitation, all of the following apply as a result of the application of this requirement:

(a) All of the political committees and independent committees established by a for profit corporation or joint stock company, by a subsidiary of the for profit corporation or joint stock company, or by any combination thereof, are treated as a single independent committee.

(b) All of the political committees and independent committees established by a single national or international labor organization, by a labor organization of that national or international labor organization, by a local labor organization of that national or international labor organization, or by any other subordinate organization of that national or international labor organization, or by any combination thereof, are treated as a single independent committee.

(c) All of the political committees and independent committees established by an organization of national or international unions, by a state central body of that organization, by a local central body of that organization, or by any combination thereof, are treated as a single independent committee.

d) All of the political committees and independent committees established by a nonprofit corporation, by a related state entity of that nonprofit corporation, by a related local entity of that nonprofit corporation, or by any combination thereof, are treated as a single independent committee.

## M.C.L.A. § 169.254

Sec. 54.  (1) Except with respect to the exceptions and conditions in subsections (2) and (3) and section 55,[1] and to loans made in the ordinary course of business, a corporation, joint stock company, or labor organization shall not make a contribution or expenditure or provide volunteer personal services that are excluded from the definition of a contribution pursuant to section 4(3)(a).[2]

2) An officer, director, stockholder, attorney, agent, or any other person acting for a labor organization or a corporation or joint stock company, or whether incorporated under the laws of this or any other state or foreign country, except corporations formed for political purposes, shall not make a contribution or expenditure or provide volunteer personal services that are excluded from the definition of a contribution pursuant to section 4(3)(a).

(3) A corporation, joint stock company, or labor organization may make a contribution to a ballot question committee subject to this act.  A corporation, joint stock company, or labor organization may make an independent expenditure in any amount for the qualification, passage, or defeat of a ballot question.  A corporation, joint stock company, or labor organization that makes an independent expenditure under this subsection is considered a ballot question committee for the purposes of this act.

(4) A person who knowingly violates this section is guilty of a felony punishable, if the person is an individual, by a fine of not more than $5,000.00 or imprisonment for not more than 3 years, or both, or, if the person is not an individual, by a fine of not more than $10,000.00.

[1] Section 169.255.
[2] Section 169.204(3)(a).

## M.C.L.A. § 169.255

Sec. 55.  (1) A corporation organized on a for profit or nonprofit basis, a joint stock company, or a labor organization formed under the laws of this or another state or foreign country may make an expenditure for the establishment and administration and solicitation of contributions to a separate segregated fund to be used for political purposes.  A separate segregated fund established under this section shall be limited to making contributions to, and expenditures on behalf of, candidate committees, ballot question committees, political party committees, political committees, and independent committees.

(2) Contributions for a separate segregated fund established by a corporation, organized on a for profit basis, or a joint stock company under this section may be solicited from any of the following persons or their spouses:

(a) Stockholders of the corporation or company.

(b) Officers and directors of the corporation or company.

(c) Employees of the corporation or company who have policy making, managerial, professional, supervisory, or administrative nonclerical responsibilities.

(3) Contributions for a separate segregated fund established under this section by a corporation organized on a nonprofit basis may be solicited from any of the following persons or their spouses:

(a) Members of the corporation who are individuals.

(b) Stockholders of members of the corporation.

(c) Officers or directors of members of the corporation.

(d) Employees of the members of the corporation who have policy making, managerial, professional, supervisory, or administrative nonclerical responsibilities.

(e) Employees of the corporation who have policy making, managerial, professional, supervisory, or administrative nonclerical responsibilities.

Additions are indicated by underline; deletions by asterisks * * *

(4) Contributions for a separate segregated fund established under this section by a labor organization may be solicited from any of the following persons or their spouses:

(a) Members of the labor organization who are individuals.

(b) Officers or directors of the labor organization.

(c) Employees of the labor organization who have policy making, managerial, professional, supervisory, or administrative nonclerical responsibilities.

(5) Contributions shall not be obtained for a separate segregated fund established under this section by use of coercion, physical force, or as a condition of employment or membership or by using or threatening to use job discrimination or financial reprisals. A corporation organized on a for profit or nonprofit basis, a joint stock company, or a labor organization shall not solicit or obtain contributions for a separate segregated fund established under this section from an individual described in subsection (2), (3), or (4) on an automatic or passive basis including but not limited to a payroll deduction plan or reverse checkoff method. A corporation organized on a for profit or nonprofit basis, a joint stock company, or a labor organization may solicit or obtain contributions for a separate segregated fund established under this section from an individual described in subsection (2), (3), or (4) on an automatic basis, including but not limited to a payroll deduction plan, only if the individual who is contributing to the fund affirmatively consents to the contribution at least once in every calendar year.

(6) A person who knowingly violates this section is guilty of a felony punishable, if the person is an individual, by a fine of not more than $5,000.00 or imprisonment for not more than 3 years, or both, or, if the person is not an individual, by a fine of not more than $10,000.00.

ATTACHMENT II

Michigan
Chamber of Commerce

February 10, 1995

RECEIVED

FEB 1 3 1995

CANDICE S. MILLER
SEC. OF STATE
9500957

The Honorable Candice Miller
Secretary of State
Executive Office
Treasury Building - First Floor
430 West Allegan Street
Lansing, Michigan 48913

Dear Secretary Miller:

Pursuant to Section 15 (1) (e) and (2) of the Michigan Campaign Finance Act, P.A. 388 of 1976, as amended, MCL 169.201 et. seq., and R169.6 of the Michigan Administrative Code, this is a request for a declaratory ruling as well as a request for an interpretative statement as to the applicability of the Michigan Campaign Finance Act.

### Statement of Facts

1. The Michigan Chamber of Commerce Political Action Committee is a separate segregated fund under Section 55 of the Michigan Campaign Finance Act, and was established by the Michigan Chamber of Commerce, a non-profit corporation.

2. Many of the Michigan Chamber of Commerce's 6,100 members consist of for-profit corporations.

3. Several of the for-profit corporations that are members of the Michigan Chamber of Commerce have established a separate segregated fund under Section 55 of the Michigan Campaign Finance Act.

4. The Attorney General in OAG No. 5344 issued on July 20, 1978 opined that contributions to a separate segregated fund may be in the form of a voluntary payroll deduction plan.

5. The Department of State in an interpretative statement issued to Robert P. Hallenbeck on October 9, 1978 said that a corporate political action committee may use payroll deduction for receiving contributions.

6. The Secretary of State in a declaratory ruling issued to Robert Duff on October 26, 1983 held that a separate segregated fund may operate as both a Michigan committee registered under the Act and as a Federal committee registered with the Federal Election Commission.

The Honorable Candice Miller
Page two
February 10, 199...

On January 6, 1988, the Michigan Department of State issued an interpretative statement 1-88-CI) to Pat Turner which held that a corporate member of a non-profit corporation may institute a voluntary payroll deduction plan on behalf of the non-profit corporation PAC if 1) the plan is limited to employees who have policy making, managerial, professional, supervisory or administrative non-clerical responsibilities; 2) collections collected through the plan are not obtained by threat, force or coercion or as a condition of employment and 3) use of the corporate member's facilities and personnel to collect and transmit contributions to the non-profit corporation's separate segregated fund has not ascertainable monetary value and does not result in a contribution to a separate segregated fund by the corporate member.

8. In 1989 the Michigan Legislature amended Section 21 of the Michigan Campaign Finance Act to provide that if a PAC does not conduct business through an office or other facility located in Michigan, the PAC can have a non-resident treasurer and an out-of-state depository. The non-resident treasurer must file an irrevocable stipulation agreeing to the service of legal process.

9. Section 42(2) of the Michigan Campaign Finance Act was amended in P.A. 117 of 1994 to provide that:

> A contribution of more than $20.00, from a person whose treasurer does not reside in, whose principal office is not located in, or whose funds are not kept in this state, shall not be accepted by a person for purposes of supporting or opposing candidates for elective office or the qualification, passage, or defeat of a ballot question unless accompanied by a statement certified as true and correct by an officer of the contributing person setting forth the full name and address along with the amount contributed, of each person who contributed more than $20 00 of the contribution. The occupation, employer, and principal place of business shall be listed for each person who contributed more than $100.00 to the total amount of the contribution. The certified statement shall also state that the contribution was not made from an account containing funds prohibited by Section 54. This subsection does not apply if the contributing person is registered as a committee under Section 24.

10. On April 1, 1995, P.A. 117 of 1994 takes effect. In this new law Section 55(5) is amended to read as follows:

> Contributions shall not be obtained for a separate segregated fund established under this section by use of coercion, physical force, or by using or threatening to use job discrimination or financial reprisals. A corporation organized on a for-profit or non-profit basis, a joint stock company, or a labor organization shall not solicit or obtain contributions for a separate segregated fund established under this section from an individual described in subsection (2)(3), or (4) on an automatic or passive basis including but not limited to a payroll deduction plan or reverse check-off method. A corporation organized as a for-profit basis or non-profit basis, a joint stock company, or a labor organization may solicit or obtain contributions for a separate segregated fund established under this section from an individual described in subsection (2) (3), or (4) or an automatic basis, including, but not limited to a payroll deduction plan, only if the individual who is contributing to the fund affirmatively consents to the contribution at least once in every calendar year.

The Honorable Candice Miller
Page three
February 10, 199

,1. The Michigan Chamber of Commerce administers a payroll deduction program for its employees who have policy making, managerial, professional, supervisory, or administrative non-clerical responsibilities for use in making contributions to its separate segregated fund.

The Michigan Chamber of Commerce intends to continue its payroll deduction program for eligible employees to use in making contributions to the Michigan Chamber PAC, after the effective date of P.A. .17 of 1994, and therefore, requests a declaratory ruling as to the applicability of the Michigan Campaign Finance Act, to the following questions in order to guide its course of conduct:

## Declaratory Ruling Questions

1. If the Michigan Chamber of Commerce before April 1, 1995, receives the affirmative consent of an eligible employee to continue the Political Action Committee payroll deduction does that consent remain valid up to and including December 31, 1996? Without receiving affirmative consent during calendar year 1995 from an eligible employee, must PAC payroll deduction that is not a "reverse check-off" cease on December 31, 1995 for that employee?

2. What is necessary to evidence "affirmative consent"? May a box be checked labeled "Yes continue my PAC payroll deduction for this calendar year", or must the contributor affix his o her signature to some similar affirmative attestation?

3. May affirmative consent be given verbally by a contributor to an agent of the Michigai Chamber of Commerce over the telephone?

On behalf of its member for-profit corporations who have established a separate segregated fund, th Michigan Chamber of Commerce requests an interpretative statement from the Department of State to th following questions in order for our members to guide their course of conduct:

## Interpretative Statement Questions

1. If a for-profit corporation, which currently operates a joint federal/state PAC (where 50% the payroll deduction is used for Michigan elections and the other 50% is used for feder elections), does not receive for a calendar year the affirmative consent of an eligible employ to continue the PAC payroll deduction, may the payroll deduction continue for that porti designated for federal election purposes?

2. If out-of-state company registers its separate segregated fund as provided for in Section Campaign Finance Act, must all eligible employees who participate in a payr deduction program for that out-of-state PAC give during calendar year 1995 affirmat consent for that payroll deduction program to continue or is the affirmative cons requirement only required of Michigan employees in order to be eligible to participate Michigan elections?

3. If an out-of-state PAC makes a contribution to a Michigan candidate as is provided for Section 42(2) and the funds were derived from a payroll deduction plan where no affirmat consent for the payroll deduction was given pursuant to Section 55(5), may the contributior accepted by a Michigan candidate?

The Honorable Candice Miller
Page four
February 10, 1995

4. Unlike the Federal Election Campaign Act, the Michigan Campaign Finance Act does not permit a corporation to twice annually solicit all employees for contributions to the corporation's separate segregated fund. Therefore, is a corporation, with or without its own separate segregated fund, under any requirement of the Michigan Campaign Finance Act to make payroll deduction available to members of a labor organization that represent company employees for use in contributing to the labor organization's separate segregated fund?

5. If a corporation, under part of a collective bargaining agreement, consents to make payroll deduction available to union members who wish to contribute to the separate segregated fund of their labor organization, is the labor organization required to reimburse the corporation for the actual expenses incurred in establishing and administering that program (See Thodis DR 1/20/87) and 11 CFR 114.5(k)(1)?

6. If a separate segregated fund has previously utilized a "reverse check-off" plan to collect PAC contributions, must that reverse check-off cease on April 1, 1995, the effective date of P.A. 117 of 1994 (See McNenly DR 8/4/87 and Shields DR 11/16/87)?

Please contact me if you require any additional information regarding this declaratory ruling request.

Sincerely,

Robert S. LaBrant
Vice President, Political Affairs
and General Counsel